## CITY OF DALLAS v. MESEROLE.
### No. 13249.

Court of Civil Appeals of Texas. Dallas.
Oct. 17, 1941.

Rehearing Denied Nov. 21, 1941.

H. P. Kucera, A. J. Thuss, Chas. E. Long, Jr., and R. L. Dillard, Jr., all of Dallas, for appellant.

McCombs & Andress, of Dallas, for appellee.

Alvin H. Lane, of Dallas, Amicus Curiae.

BOND, Chief Justice.

This appeal is from an order of a district court of Dallas County, restraining, by a writ of temporary injunction, the City of Dallas, its officers, agents, servants and employes from exercising any dominion, control or governmental power as a municipality over plaintiff's property under ordinance No. 3266, passed on August 21, 1941, and from interfering with, harassing or molesting plaintiff, his agents, servants, and employes from completing two store buildings under construction; and from attempting enforcement against plaintiff, his agents, servants and employes of the provisions of said ordinance. The evident effect of the injunction was to allow plaintiff free and uninterrupted use of his property, to

complete two industrial buildings then under construction and to erect other such buildings on eighty-four lots owned by him, located in a potential residential area in the City of Dallas, without submitting plans and specifications to, and applying for a permit from, the City authorities for such construction. Plaintiff sought by injunction to defy the zoning ordinances of the City of Dallas affecting his property, and to continue under the protection of the injunction to complete said two buildings, on the theory, first, that his property was without the jurisdiction of the City, and second, that the ordinance, designated in the record as No. 3266, was void. We are not in accord with either of the contentions urged.

The Legislature (Art. 1175) enumerated the powers of cities, such as Dallas, adopting special charters, to exercise local powers of self-government, free and independent of further legislative grants. Among the powers thus granted is, "2. The power to fix the boundary limits of said city, to provide for the extension of said boundary limits and the annexation of additional territory lying adjacent to said city, according to such rules as may be provided by said charter." The charter of the City of Dallas provides: "Sec. 4. Additional Territory: Any territory adjoining the present or future boundaries of said city may from time to time, in any size or shape desired, be admitted and become a part thereof on application made, or written consent given to the City Council by the owner or owners of the land; or, as the case may be, by a majority of the legal voters resident on the land sought to be added. In all such cases, the territory so added shall be described by metes and bounds in an ordinance, accepting, assenting and adding the same to the municipal corporation and thereafter, the inhabitants of said territory shall in all respects be on an equal footing with the inhabitants of the original municipal territory."

On April 22, 1941, a majority of the legal voters resident on approximately 76.7 acres of land, including the land owned by plaintiff, presented to the Commission of the City of Dallas a petition requesting annexation. The land was specifically described in the petition and shown to be adjacent to the corporate limits of the City. The City Commission accepted the petition, assented to the annexation and directed that an ordinance be drafted for adoption. The ordinance was finally passed on August 21, 1941, fully annexing the land therein described for all municipal purposes.

The City of Dallas, by virtue of the Acts of the 40th Legislature, p. 424, Ch. 283, Arts. 1011a to 1011j, Vernon's Ann.Civ.St., known as the zoning statutes, which make elaborate provisions relative to the exercise of power by cities to regulate and restrict the height, number of stories, size of buildings, and other restrictions, etc., and to divide the municipality into districts of such number, shape and area as best suited to promote the health, safety, morals, or general welfare of the community, passed a comprehensive zoning ordinance. The validity of the zoning statute of the State and the zoning ordinance of the City of Dallas has been upheld by the courts of this State. Scott v. Champion Bldg. Co., Tex.Civ.App., 28 S.W.2d 178; Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475.

It will be observed from the statute that the power to zone is to be exercised for the purpose of promoting the health, safety, morals, or general welfare of the community, and that the zoning power of municipalities is to be exercised only in accordance with such comprehensive plan, and for the purposes enumerated. The zoning ordinance of the City of Dallas (Sec. 1) stipulates the purposes of promoting the health, safety, morals, or general welfare of the community, and is expressly designed to lessen congestion in the streets, to secure safety from fire, panic and other dangers; to provide adequate light and air; to prevent overcrowding of population; to facilitate adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. The ordinance (Sec. 2) divides the City into zones and declares that, except as provided in the ordinance, no buildings shall be erected or structurally altered except in conformity with the regulations prescribed for the use of the area described in which such building is located. Business institutions, apartment houses, local retail stores and manufacturing establishments are not permitted in a dwelling district, with certain exceptions such as telephone exchanges, water supply features, passenger stations, farms, nurseries, greenhouses, etc. Sec. 201 of the building code of said City, in part, reads: "No person shall erect or construct any building or structure, nor add to, enlarge, move, improve, alter, convert, extend or demolish any building or structure, or cause

the same to be done, without first obtaining a building permit therefor from the Building Inspector. Any person desiring a building permit as required by this Code shall file with the Building Inspector an application therefor in writing on a blank form to be furnished for that purpose." The zoning act of the Legislature of the State and the zoning ordinance of the City of Dallas are admissible grants of police power of the state to such cities. "Generally speaking, municipal corporations have the right, under the police power, to safeguard the health, comfort, and general welfare of their citizens by such reasonable regulations as are necessary for that purpose." 30 Tex.Jur., p. 120, § 58.

Thus, in conformity with the statute and in furtherance of the purposes designed in the City's comprehensive zoning plan, the City Commission, on August 21, 1941, passed ordinance No. 3266 for temporary or emergency zoning in all areas newly annexed to the City, effective only until permanent zoning regulations shall be promulgated "as provided by the statute"; that is, to promote the health, safety, morals, or general welfare of the City. The ordinance, condemned by the injunction provides:

"Whereas, the City of Dallas is frequently petitioned to annex additional territory to the City of Dallas for all municipal purposes and during the period following the annexation, and before permanent zoning regulations have been duly enacted, problems of building construction arise and there is no definite rule, or provision, now provided for by the ordinances of the City of Dallas which would provide a uniform method for the issuance of permits in order to protect and properly safeguard the various neighborhoods, or localities, in the matter of proper zoning, having due regard to the public welfare and comfort, it is necessary that such temporary rules and regulations be provided until permanent zoning can be promulgated with due hearings afforded to the property owners affected; Now, therefore,

"Be It Ordained by the City Council of the City of Dallas: Section 1. That no permit for the construction of a building shall be issued by the building inspector in a territory newly annexed to the City of Dallas other than a permit which will allow the construction of a building permitted to be constructed in what is defined as a '1-A Dwelling District' as defined in ordinance No. 2052 and amendments thereto of the City of Dallas which provides the general zoning regulations applicable to the City of Dallas. An application for any other use than that specified hereinabove shall be made to the building inspector of the City of Dallas and by him referred to the City Plan Commission which acts as the Zoning Commission on the designation by the Council of the City of Dallas for a consideration and recommendation to the City Council. Whenever such recommendation is filed with the City Council by the City Plan Commission, such classification and such recommendation shall be advisory in its nature and the Council shall be at liberty to affirm it or allow such construction as the facts in their opinion may justify.

"Section 2. No existing building within any territory newly annexed to the City of Dallas not now lawfully used for business purposes shall be altered, remodeled or constructed for business purposes without a permit from the City Council of the City of Dallas. This permit shall be obtained under the same procedure set out in Section 1 of this ordinance.

"Section 3. That the owner, lessee, or any other person, firm or corporation owning, controlling, constructing, supervising or directing the construction of any building or structure now in process of construction and which is incomplete at the time the land upon which it is situated is annexed to the City of Dallas, before proceeding any further with the construction, alteration or completion thereof, shall apply to the building inspector of the City of Dallas for a permit authorizing further work on said building or structure and shall attach to said application for such permit plans and specifications relating to the construction of said building, or structure, which said application for building permit shall be promptly referred to the City Plan Commission for consideration and said Commission shall promptly thereafter file with said governing body its recommendation as to granting, modifying or rejecting said permit, the said recommendation to be advisory, as stated in Section 1 hereof. Said construction work shall be suspended until the permit provided for herein has been issued, or until final zoning regulations have been adopted, which permit the construction, use and occupancy of the structure or building.

"Section 4. That anyone violating the provisions of this ordinance shall be guilty

of a misdemeanor and upon conviction thereof shall be fined any sum not to exceed Two Hundred ($200.00) Dollars, and each day such violation shall exist, or be permitted, shall constitute a separate offense."

This emergency or interim ordinance evidences a reasonable regulation to effectuate the purposes of the comprehensive zoning ordinance of the City of Dallas, and applicable to all newly annexed territory. It imposes no unreasonable burdens upon the citizens and takes away none of their constitutional rights. Evidently, the ordinance was enacted to maintain the status quo of such annexed territory and enable the City Council to gather data and information to be used as a basis for granting or refusing permits for construction, use and occupancy of buildings or structures in such territory, pending the permanent zoning thereof. There is nothing in the ordinance to indicate that a permit for construction of commercial buildings, or the alteration or completion of buildings under construction would not be issued on proper application therefor, accompanied by plans and specifications. It must be conceded, in the absence of pleadings and proof, that the City Council enacted the ordinance in good faith and that the citizens of the affected territory would not, in all respects, be on an equal footing with the inhabitants of the original municipal territory. It might well be presumed that the comprehensive zoning ordinances of the City will be extended to such areas and that the Council will act in the premise only to promote the health, safety, morals and general welfare of the community, and not otherwise. It may be fairly said that the ordinance, being, as it declares, an initial unit in the general zoning of the City, is a part and parcel of the comprehensive plan which has relation to the City as a whole, therefore a valid exercise of police power. It confers no arbitrary or unreasonable exercise of power over property rights, but has for its aim and purpose the general welfare of the community.

■ The record reveals that plaintiff, appellee here, made no application to the City authorities for permit to construct buildings on the lots in question, and that he had no plans or specifications to submit to the Council depicting the construction and uses of such buildings. Appellee contends that his right to erect the two buildings and the exercise of uses thereof are not affected by the adoption of ordinance No. 3266, even though it be held that its applicable provisions are valid, for the reason, the construction was in progress before said ordinance became effective. It appears that the work of construction was not begun until after the citizens' petition for annexation was duly filed and the City had assented to annex the property by drafting necessary ordinance in accordance therewith, and then, only to the extent of digging a dozen post holes for the foundation of said buildings and filling them with cement. Excavation for the concrete beam was begun about August 12, 1941, and no further work had been done on the buildings up to the time the ordinance was finally passed on August 21, 1941. Then too, it can hardly be said, under such circumstances, that appellee was innocent in the work done toward the construction of the two buildings. However, conceding his innocence, the question remains whether the City had the right to exercise the police power. We believe Meserole had no inherent or acquired right to proceed with the construction of his two commercial buildings free of the reasonable exercise of the police power. The territory having been annexed, ordinance No. 3266 merely suspends further construction on the part of appellee until a permit is secured in the manner therein provided, limiting only the right of the City's building inspector to issue the permit without submitting the application to the City Council.

■ It would seem a rather strict application of law to hold that a city, granted power to annex adjacent territory on petition of a majority of its citizens, and then, forsooth, in the interim, before the necessary steps are taken to annex such territory, and properly zone the territory, which necessarily takes some time, the will of the majority and the evident intent of the City to annex and lawfully zone the territory be defeated by a lone objector to the annexation and zoning, by construction of buildings on his property, inimical to the general zoning ordinances of such city. We think, when the citizens' petition was filed with the City and the Council assented to the annexation, potential jurisdiction was then attached to the City; at least, such action extended the police power to hold the area in status quo, pending final determination of annexation and zoning. State v. Baker, 120 Tex. 307, 40 S.W.2d 41; State v. City of San Antonio, Tex.Civ.App., 147 S.W.2d 551. In the interim, whatever change may have been brought about in the area by any of the property owners, and whatever expenditures were made by them

were made at their peril. Under such circumstances, property owners can have no vested right to a course of conduct free from any lawful restraint and the lawful exercise of police power. Connor v. City of University Park, Tex.Civ.App., 142 S.W.2d 706. In the case of State v. Baker, supra, our Supreme Court held, in effect, that the right conferred by statute to incorporate having been lawfully invoked cannot be interfered with by subsequent action of objecting citizens; this is also the holding in State v. City of San Antonio, Tex.Civ.App., 147 S.W.2d 551.

Bearing upon the question, after quoting Sec. 21 of the Dallas zoning ordinance, forbidding retroactive effect being given an ordinance on property constructed, or under construction, at the effective date of such ordinance, this Court, in Scott v. Champion Bldg. Co., Tex.Civ.App., 28 S.W.2d 178, 184, had this to say: "Obviously this section forbids a retroactive effect being given the ordinance, and was evidently designed to protect, from financial loss, those who, prior to the adoption of the ordinance, or an amendment introducing new restrictions and regulations, had begun the construction, or had planned and secured a permit for the construction of a building for a designated use. But this provision protects the innocent, that is, one who legally and rightfully began, or planned, the construction of a building for a designated use, prior to the effectiveness of the ordinance or an amendment thereto, but we do not think one can claim immunity under this provision who, in doing these things, acted in defiance of a valid ordinance."

It is, therefore, the conclusion of the Court that the City of Dallas had jurisdiction over the annexed territory to hold the property in status quo, pending permanent zoning thereof; and that the ordinance, designated in the record as No. 3266, is a valid exercise of the police power of such municipality, and vests no arbitrary power in the City Council to refuse Meserole a permit. The court erred in granting the temporary injunction; accordingly, the judgment is reversed and here rendered, dissolving the injunction.

Reversed and rendered.