June B. WALLACE et al., Appellants,

v.

Wilton J. DANIEL et al., Appellees.

R. W. WADDELL et al., Appellants,

v.

C. Aubrey SMITH, Jr., Trustee et al., Appellees.

Nos. 230, 231.

Court of Civil Appeals of Texas.

Tyler.

Nov. 3, 1966.

Rehearing Denied Dec. 8, 1966.

John Glass, Glass & Glass, Tyler, for appellants.

Charles Potter, Spruiell, Lowry, Potter, Lasater & Guinn, Troy Smith, Tyler, for appellees.

MOORE, Justice.

This suit involves the validity of two amendatory ordinances enacted by the City of Tyler changing the zone classification on a 41-acre tract of land from zone R–1a Residential to C–4 Planned Commercial.

The controversy arose in this manner. Appellees, on April 14, 1965, filed an application with the City Commission requesting a change in the zone classification on the 41-acre tract of land from zone R–1a Residential to C–1 Commercial District. The application was referred to the Plan Commission and a date was set for the hearing. Notice was mailed to appellants, the adjoining landowners, notifying them of the date of the hearing. After a hearing before the Plan Commission, at which appellants appeared either in person or by their attorney, the Plan Commission recommended that the zone classification be changed to zone C–4 Planned Commercial District, rather than zone C–1 Local Commercial District as applied for by the appellees. The matter was then referred to the City Commission. A date was set for a public hearing and notice was issued stating that a hearing was to be held on the application for a change from zone R–1a to zone C–1. The notice further stated, however, that the Plan Commission had recommended a change to zone C–4. All appellants appeared at the hearing either in person or by their attorney and protested any change. At the conclusion of the hearing, the City Commission enacted the first amendatory ordinance changing the zone from R–1a to C–4 rather than to zone C–1 as applied for by appellees. The date of this ordinance was June 4, 1965.

On June 9, 1965, within five days after the above and foregoing ordinance was

enacted, appellants (plaintifffs) who were landowners affected by the ordinance, instituted suit in the District Court, styled June B. Wallace, et al. vs. Wilton J. Daniel, et al., Cause No. 65–441, seeking a declaratory judgment declaring the ordinance void and a permanent injunction to restrain enforcement thereof.

On June 11, 1965, within two days after the suit was filed, the appellees filed another application with the City Commission requesting that the zone classification on the 41 acres in question be changed from R–1a to C–4. The application was referred to the City Plan Commission. A date was set for the hearing and notices were mailed to each of the appellants. Appellants do not deny notice of the hearing or that they each appeared and contested the application either in person or by their attorney. During the process of the hearing, appellees offered in evidence certain plans which they had prepared showing their planned use and development of the 41 acres as a shopping center. After a rather extensive hearing and discussion of the matter, the Plan Commission voted to approve the plan for use and development and change the zone to C–4. The matter was then submitted to the City Commission. A date was set for the hearing and notice thereof was duly issued. Appellants do not deny notice and admit that each of them appeared at the hearing either in person or by their attorney and protested the application. At the conclusion of the hearing, the City Commission enacted the second amendatory ordinance, again changing the zone classification from R–1a to C–4 as requested by the second application. The date of this ordinance was August 9, 1965.

Then, on August 20, 1965, appellants as plaintiffs, filed their second suit styled R. W. Waddell, et al. vs. C. Aubrey Smith, Jr., Trustee, et al., Cause No. 65–662, challenging the validity of the second ordinance, likewise seeking a declaratory judgment and injunctive relief.

The appellees answered each of the suits with a general denial.

Upon agreement of the parties the two causes were jointly tried before the court without a jury. The trial court rendered judgment for the appellees, finding each of the amendatory ordinances to be legally enacted and valid, and denied appellants' application for injunctive relief. Upon the request of appellants, the trial court filed extensive findings of fact and conclusions of law. Motions for a new trial were overruled in each of the two causes and appellants perfected their appeal from each of said judgments. By agreement of the parties, and with permission of this court, the two causes were consolidated for the purpose of appeal.

Appellants have brought forward 49 assignments of error. The first ten points constitute an attack upon the validity of the ordinances, while the remaining 39 points attack the findings of fact and conclusions of law.

■ In their second point of error appellants contend that the trial court erred in refusing to declare void the *first* amendatory ordinance of June 4th because (1) there was no plan for use and development presented to the Plan Commission and (2) the City Commission never approved a plan for use and development for the C–4 classification as required by Section XII of the basic zoning ordinance. We sustain this contention.

It is undisputed that the City of Tyler is a home-rule municipal corporation with a valid basic zoning ordinance, enacted in accordance with the City Zoning Law, Acts 1927, 40th Leg., page 424, Ch. 283, codified as Articles 1011a through 1011j, Vernon's Ann.Tex.Civ.St. Section XXIII of the city's basic zoning ordinance provides that the same may be amended from time to time by the City Commission, but that any proposed amendments, supplements or changes shall first be submitted to the City Plan

Commission for their recommendation and report.

Section XII sets forth a special procedure to be followed in applications requesting a change in zone to a C–4 Planned Commercial District, and provides in part as follows:

"1. In order to provide for modern retail shopping facilities of integrated design in appropriate locations to serve residential neighborhoods, the C–4 Planned Commercial District is hereby established. Such district shall be laid out and developed as provided below so as to accomplish such purpose.

"2. The owner or owners of any tract of land comprising an area of not less than three acres may submit to the City Commission a plan for the use and development of all or part of such tract for the purposes of and meeting the requirements set forth in this Section, * * *. The plan shall be referred to the City Plan Commission for study and report and for public hearing. Notice and publication of such public hearing shall conform to the procedure for hearings on amendments prescribed in Section XXIII. * * * If the Plan Commission approves the plans, they shall then be submitted to the City Commission for their consideration and action. The Plan Commission's approval and recommendations shall be accompanied by a report stating the reasons for approval and that the application meets the requirements of the C–4 Planned Commercial District as set forth in this Section."

When appellees filed their first application for a change to C–1, they did not file a plan for use and development because the basic ordinance did not require such a plan in connection with an application for a C–1 classification. Appellants did, however, attach, a plat showing that a shopping center was intended. The plat was not in detail and some of the adjoining landowners objected to the construction of a shopping center because they had not been furnished with sufficient information of the proposed use. The Plan Commission suggested that a C–4 classification might be more appropriate than the C–1 classification. Appellees agreed to accept the change and the Plan Commission then approved a change to C–4, rather than C–1, as requested by appellees.

The basic zoning ordinance specifically requires the Plan Commission to hold a public hearing upon the plan for use and development prior to granting a change to zone C–4. While it is without dispute that a public hearing was held, it does not appear that a hearing was held with respect to the plan for use and development because no such plan was before the Commission. As a result the interested landowners were denied an opportunity to be heard upon the proposed plan for use and development as provided for in Section XII of the basic ordinance.

It appears to us that the provisions of Section XII requiring a plan for use and development contemplates something more than a mere plat.

Moreover, Section XII provides for the approval of the plan by the Plan Commission prior to reporting their action to the City Commission. Their final report fails to show that a plan for use and development was ever presented, nor does it show any such plan was approved or that the application met the requirements of the. C–4 classification. Furthermore, when the first ordinance was finally enacted by the City Commission, it was enacted "subject to the City Commission's approval of final plans." It thus appears that the City Commission recognized the fact that the plat was not sufficient and that the application was before them without a plan for use and development. Without question, the procedural requirements laid down as the basic zoning ordinance were not followed.

■ The Legislature having provided by Article 1011b, supra, that cities adopting a Comprehensive Zoning Ordinance must provide a procedure for the amendment of

such ordinance, by implication directs that the city will follow the procedure it adopts. Smart v. Lloyd (Tex.Civ.App.) 370 S.W.2d 245.

Since the procedure adopted was not followed, we hold that the first ordinance enacted by the city on June 4, 1965, changing the zoning classification to C–4, without first having afforded appellants a hearing upon the proposed use and development and without approval of such plan by the Commission, is a nullity and of no effect.

■ By points 3 and 4 appellants assert that the *second* amendatory ordinance is invalid because at the time of its enactment the City Commission did not have before it any lawfully made and adopted report of the Plan Commission recommending a change to C–4. Appellants contend that the Plan Commission's report is invalid because it was not prepared during the meeting with all members present.

As pointed out above, Section XII, paragraph 2, provides that if the Plan Commission approves the plan for use and development, such plan shall be submitted to the City Commission for their consideration and action. It further provides that the Plan Commission shall submit a report stating the reasons for their approval and also stating that the application meets the requirements of the C–4 Planned Commercial District.

In paragraph 14 of the findings of fact, the trial court found as follows:

"Before the members of the City Plan Commission retired, and while they were still in fact meeting as a Plan Commission, on July 9, 1965, they dictated to the City Clerk, who was then acting in her official capacity, a report to the City Commission stating the reasons for their approval of the rezoning and the plan for use and development of the rezoned area. This report was later signed by the Chairman of the City Plan Commission and placed in the official file kept for that purpose by the City Clerk for

consideration by the City Commission at the meeting hereafter referred to."

While the testimony of the City Clerk is somewhat vague as to whether the report was dictated during the meeting or immediately thereafter while the members were still present, it is undisputed that a hearing was held and that a majority of the members voted for the change. The report, signed by its Chairman, appears in the record before us. It shows that the plan for use and development was approved; that the application complied with the requirements of the C–4 Planned Commercial District; and by a majority vote, the Plan Commission recommended the change. The basic ordinance makes no provision as to when or by whom the report shall be prepared, nor does it provide that the same shall be signed by each member.

Since appellants do not attack the accuracy of the report and the basic zoning ordinances do not provide for the method of preparation thereof, the question of when or by whom same was prepared would not appear to be material to the inquiry and therefore the action of the trial court in admitting the report in evidence and refusing to strike the same does not reflect error.

■ Appellants next contend that the court erred in refusing to declare the *second* amendatory ordinance void because the second application was filed within six months after the first and was therefore in violation of paragraph 4 of Section XXIII which reads as follows:

" * * * A party or a successor in title shall not initiate action for a zoning amendment affecting the same land for the same zoning classification or a *less restricted* classification more than once every six months." (Emphasis supplied).

We have determined that this contention must be overruled. A reading of the basic ordinance providing for the C–1 classification as compared with the C–4 classification clearly shows that the use of the prop-

erty under the C–4 classification is more restrictive than that provided for under the C–1 classification. Under the C–1 classification, it would be possible for the owners to build a shopping center containing, among others, any or all of the following business establishments: repair shops, filling stations, laundry, bakery, beauty parlor, barber shop, bank, dry cleaning establishments, office buildings, etc. The only restrictions on such use provided for under the basic ordinance are the requirements for off street parking, the limitation on the size and number of outdoor signs and the height of the buildings. The C–4 classification, on the other hand, relates only to shopping centers and requires the applicant to present his plan for use and development. Such plan must be approved by the City prior to granting a change to C–4. It provides that the entire operation must be of a single ownership or under single management; that the premises may be used *only* for the retail sale of merchandise, services and recreational, except for outdoor theaters. The shopping center is required to be designed as a whole, unified and a single project and if built in stages must conform to the approved plan. The buildings cannot exceed 25% of the entire lot area of the project and must be set back 30 feet from the street; all streets and sidewalks must be paved or hardsurfaced and meet the specifications of the Plan Commission. There must be one parking space for each 100 square feet of floor area in the buildings; all areas not used for the buildings and parking lot must be landscaped with grass, trees, shrubs or pedestrian walks. Finally, the ordinance provides that the Plan Commission may impose reasonable additional requirements as to landscaping, lighting, signs, advertising, screening, access ways, and also that building setbacks and building height limitations may be imposed by the Commission for the protection of the adjoining property owners. It thus appears to us that if a person were to set out to build a shopping center in the City of Tyler and desired to select a zoning classi-

fication carrying with it the least amount of restrictions, there is little doubt that he would select the C–1 zone rather than the C–4 classification because the restrictions imposed under C–4 are far greater than those imposed by the C–1. Appellants argue, however, that the basic zoning ordinance shows on its face that C–1 is less restrictive than C–4 in that the ordinance sets forth the various classes commencing first with the most restrictive and going to the least restrictive. In this connection it is argued that since C–4 follows C–1, it is less restrictive and therefore appellees are prohibited from making a second application within the six months' period. We do not believe, however, that the order in which the classes are listed in the basic ordinance is the sole factor in determining whether C–4 is less restrictive than C–1. The basic purpose in all restrictive ordinances is to prevent one property owner from devoting his property to a use which would be unduly imposed on the adjoining landowners in the use and enjoyment of their property. The ultimate question to be determined, therefore, is which of the two classifications would be more likely to accomplish that purpose. It appears to us that the C–4 classification would be much more restrictive and as such would afford appellants much more protection in the use and enjoyment of their property than the C–1 classification. Consequently, since the C–4 classification is more restrictive than C–1, appellees were not prohibited from filing the second application within the six months. Appellants' fifth point is overruled.

■ In their sixth point appellants assert that *both* the *first* and *second* amendatory ordinances were void because appellees were not the owner or owners of the property sought to be rezoned. The argument is that since it is undisputed that the appellees did not own all the land but held an option on a portion of the same, they were ineligible to apply for a change under Section XII. While this Section does provide that the· "owner or owners"

may make application for a C–4 classification, we do not believe this Section to be controlling. Section XXIII is the Section of the basic zoning ordinance which specifically deals with amendments. It provides in paragraph 4 thereof that:

"4. A property owner, lessee, developer or option holder may petition the City Commission for an amendment to the text or District Map of this Ordinance, * * *."

In points nine and ten appellants contend that the trial court erred in refusing to declare *both* the *first* and *second* ordinances void because there was no substantial evidence to support the action of the City Commission in making a change to C–4, and that such action was arbitrary, unreasonable and capricious.

The trial court found that the action of the city was supported by substantial evidence. Findings of fact 17(a) through (o) show what the court took to be substantial evidence supporting the rezoning. These findings were, in part, as follows:

"(a) The highest and best use for the 41.3415 acre tract is for commercial development, * * *.

" * * *

"(c) The tract is generally unsuitable for residential development, because there is commercial development to the north. * * * The surface of the tract is very irregular, with a difference in elevation of approximately 100 feet, which makes the cost of levelling and installing storm sewers prohibitive for residential development.

"(d) On the east this property fronts on the Tyler-Troup Highway, a four-lane thoroughfare. On its west it fronts on Paluxy Drive, which according to the comprehensive plan, is designed as a four-lane thoroughfare, an extension to Farm-to-Market Road 756 for entrance into Green Acres Shopping Center. To the north of the property is Dennis Drive, which separates this property from Green Acres Shopping Center. De Charles Street is a collector street entering from the west into Paluxy Drive, which furnishes convenient access to the 41.3415 acre tract. Loop 323 is now in process of being widened into a four-lane traffic artery. Considering the size and capacity of the Tyler-Troup Highway, Loop 323 and Paluxy Drive, and their location with reference to the 41.3415 acre tract, the tract is desirably located with reference to traffic and traffic safety. These streets can handle the traffic which would be attracted to the proposed shopping center to be constructed on this tract with a high degree of safety.

"(e) To the extent that traffic is attracted to this proposed shopping center, traffic will be reduced in the downtown shopping area. The traffic arteries surrounding this tract can handle such traffic with greater safety than the downtown streets can handle the same.

" * * *

"(g) The additional commercial development along the Tyler-Troup Highway and Loop 323 since November 4, 1960, makes the 41.3415 acre tract more desirable for commercial development and constitutes a substantial change in the area.

"(h) The population increase in the City of Tyler since November 4, 1960, has been largely in the Green Acres area, which is the area in which the 41.3415 acre tract is located. This also constitutes a substantial change in the area since that date.

"(i) Due to the extreme differences in elevation of the 41.3415 acre tract, the lower portions of it are marshy, or swampy, which creates a health hazard. By developing the property as commercial, it will be levelled and drained, doing away with the marshy or swampy area, which tends to improve the general health of the area.

(j) Certain portions of the tract have been used as a dumping ground for trash

of various kinds, as an unimproved area where beer bottles and beer cans are thrown by passing motorists. This will be corrected by its development as commercial property, the very nature of which requires that it be kept clean and sightly. The cleanup will be favorable to the general health of the area.

"* * *

"(1) There is substantial evidence that the amendatory ordinance and the construction of the planned commercial area will not be damaging to adjoining property, and in some instances may be beneficial to and increase the value of the same. This is true especially considering that the plan for development contemplates a 40 ft. buffer strip along the west side of Paluxy Street. This buffer includes 15 feet of the city parkway and 25 feet off the west side of the 41.3415 acre tract, which will extend along the west side of said tract. This buffer will be beautified and landscaped with plantings in an attractive manner according to the defendants' plans."

Appellants produced evidence contradicting some of the above matters but there is evidence in the record supporting each of the findings of fact as filed by the trial court. As we view the record, reasonable minds could differ in considering such conflicting evidence adduced upon the trial.

■ The enactment of any zoning ordinance is an exercise of the legislative power of the City Commission and is presumably valid. If there existed substantial probative evidence at the time of the enactment of the amendatory ordinances, or if the fact issues in connection therewith are fairly debatable, the courts will not interfere. City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477 (1955); Tilley v. Rogers, 405 S.W.2d 220 (Tex.Civ. App.). As we view the evidence, the fact issues before the City Commission at the time the ordinances were enacted were sub-stantial and fairly debatable. We have concluded that no abuse of discretion was shown and that enactment of the ordinances was a valid exercise of the power conferred upon the City Commission. Appellants' points of error are overruled.

■ Appellants next contend by point eight that the *second* amendatory ordinance passed on August 9, 1965, was void because no sufficiently specific and detailed plan for use and development was submitted or approved by the Plan Commission prior to its recommending a change to the C-4 classification.

In the finding of fact 17(b) the trial court found:

"(b) The said plan for use and development is reasonably sufficient to apprise all interested parties of the general nature of the development, sufficient under procedures theretofore adopted by the Plan Commission and City Commission in like cases. It is as definite as might reasonably be required or intended, considering the much greater expense which be required by detailed plans and specifications at a time when it was uncertain whether the project could be constructed at all."

While there were no detailed plans and specifications offered before the Plan Commission, appellees did offer numerous maps and plats as well as artists' drawing depicting the proposed shopping center together with the parking areas, buffer zones and streets with the proposed entrances and exits. It seems to be without dispute that all of this information was before the City Plan Commission prior to the enactment of the second amendatory ordinance.

What we have heretofore said with regard to the substantial evidence rule applies equally as well here. As we view the matter, there was substantial evidence of the planned use and development. At least, the question is fairly debatable. Under

such circumstances, the courts are not permitted to interfere.

Appellants' remaining points of error have been considered and have been found to be without merit and are therefore overruled.

In view of our ruling holding the first ordinance invalid, the judgment of the trial court in Cause No. 65–441 styled June B. Wallace, et al. vs. Wilton J. Daniel, et al., is reversed and judgment is hereby rendered declaring the first amendatory ordinance dated June 4, 1965, to be null and void.

The judgment rendered by the trial court upholding the verdict of the second amendatory ordinance is supported by the evidence and no reversible error in connection therewith having been found, the judgment of the court in Cause No. 65–662 styled R. W. Waddell, et al. vs. C. Aubrey Smith, Jr., Trustee, et al., must therefore be affirmed.