CITY OF DALLAS et al., Appellants,

v.

J. Roger CROWNRICH, Appellee.

No. 741.

Court of Civil Appeals of Texas, Tyler.

Feb. 21, 1974.

Rehearing Denied March 21, 1974.

N. Alex Bickley, Ted P. MacMaster, J. Stanley Knight, Dallas, for appellants.

Saner, Jack, Sallinger & Nichols, H. Louis Nichols, Dallas, for appellee.

McKAY, Justice.

This appeal involves the question whether a city which is considering changing the zoning in a certain area is required, as a matter of law, to issue a building permit, authorized under the city's zoning ordinances, when the application for such permit is valid and complies with all the rules and regulations of the city.

The controversy involves the proposed rezoning of the area in and around Swiss Avenue in the City of Dallas. There are unique examples of early twentieth century residential architecture in the area, and Swiss Avenue itself is divided by a landscaped median. Appellee, J. Roger Crownrich, is the owner of two vacant lots located at the intersection of Swiss and Collett Avenues, which location is within the area involved. In June, 1965, the area of Swiss Avenue from Fitzhugh Avenue to La Vista Street was rezoned from residential to Planned Development District No. 19 (PD–19), which classification allowed one, two and multi-family structures to be erected including low and high-rise apartments.

In the summer of 1971, at the request of and in cooperation with interested residents of the area and citizens and organizations of the city, a survey was made of the people in the area, residents and property owners, to determine their interest in rezoning the area for historical preservation. This survey was conducted by the Department of Planning and Urban Development of the City of Dallas. The "Swiss Avenue Survey Report" was published by the Planning Department in March, 1972, and it recommended that the Swiss Avenue area be designated a historic district. This report was presented to the Planning Commission and the City Council in June, 1972.

The City Council then instructed the staff of the Planning and Urban Development Department to pursue the work and prepare a historical preservation ordinance. The staff followed these instructions.

The Dallas County Historical Survey Committee had been interested in Swiss Avenue for a number of years, and in July, 1972, voted to nominate the Swiss Avenue area for placement in the National Register of Historic Places and such nomination was forwarded to the Texas State Historical Survey Committee, which Committee then forwarded its recommendation to the National Committee. A copy of the "Swiss Avenue Survey Report" was forwarded with the nomination and recommendation.

In June, 1972, the staff began preparation of the historic landmark preservation ordinance. In January, 1973, the City Planning Commission approved and recommended to the City Council such an ordinance be enacted. A public hearing was held by the Planning Commission on February 1, 1973. On February 9, 1973, appellee, being the owner of two lots in the area, applied for a permit to construct a high-rise apartment building on his property. On March 12, 1973, the City Council passed a Historic Landmark Preservation Ordinance, being Ordinance No. 14011. The effect of this ordinance was to authorize the city to rezone certain areas, including the Swiss Avenue area, so as to preserve the historic and cultural purity of the area. It would prohibit the destruction of buildings or areas of historic, architectural, archaeological, or cultural importance. Under this ordinance the zoning authority of the city was granted the power to regulate the erection of new buildings in an historic area.

Also on March 12, 1973, the City Council passed Ordinance No. 14012, which created a Historic Landmark Committee. On March 19, 1973, thirty-eight days after appellee applied for a building permit, the City Council passed a resolution prohibit-

ing the Chief Building Inspector from issuing building permits in the PD–19 area until such time as the matter of historic preservation was resolved. Appellee filed his petition for writ of mandamus on April 10, 1973, seeking to compel the Chief Building Inspector to issue him a building permit. On May 3, 1973, the Historic Landmark Committee held its first meeting and adopted a resolution recommending that the City Planning Commission take action by calling a public hearing on the zoning designation of the Swiss Avenue area.

One month after suit was filed, on May 10, 1973, this cause was heard by the trial court, and after hearing evidence and argument of counsel, the court granted appellee's prayer for writ of mandamus and directed Tom Jones, Chief Building Inspector of the City of Dallas, to issue appellee a building permit for the erection of a high-rise apartment building on the property owned by him in the Swiss Avenue area.

Upon the trial, a stipulation of facts was entered into by appellee and appellant City. Portions of that stipulation that are pertinent to this appeal are as follows:

"4. That the uses proposed to be made of the subject property by the plaintiff (*appellee*) are authorized uses under the provisions of Ordinance 11082, creating Planned Development District No. 19. (Emphasis added.)

"5. That the application for building permit made by plaintiff and the uses proposed of the property by plaintiff complies with the requirements of the Comprehensive Zoning Ordinance of the City of Dallas, save and except as the same may be affected by the action of the City Council in adopting the Historic Landmark Preservation Ordinance, the Council Resolution regarding the issuance of permits and the action of the City Planning Commission in calling a public hearing to determine the status of this and other property.

"6. That the application for building permit filed by Plaintiff complied in all respects with the Building Code of the City of Dallas and other ordinances of the City of Dallas, insofar as making the application is concerned, and that Plaintiff tendered to the City of Dallas the requested permit fees.

"10. That the Historic Preservation Committee has met for the purpose of considering whether or not that portion of Swiss Avenue included in Planned Development District No. 19 should be classified as a Historic Preservation District under the provisions of said Ordinance No. 14011 and has recommended that the City Plan Commission of the City of Dallas hold a public hearing for the purpose of considering whether or not the area covered by Planned Development District No. 19, including Plaintiff's property, should be classified as a Historic Landmark District.

"11. That at the present time the Plaintiff's property is zoned so as to permit the construction of a highrise apartment building, as proposed in his application for building permit, and Plaintiff's property has not been designated as within a Historic Landmark District under the provisions of Ordinance No. 14011, adopted March 12, 1973. But it is within the area covered in the public hearing called by the City Plan Commission for June 7, 1973.

"12. That the Department of Planning and Urban Development of the City of Dallas is processing the recommendation of the Historic Landmark Preservation Committee with regard to the area covered by Planned Development District No. 19, and that a public hearing will be

held with regard to the designation of the area covered by Planned Development District No. 19 as a Historic Landmark Preservation District on June 7, 1973.

"13. That the Building Inspection Department of the City of Dallas would have issued the building permit to the Plaintiff but for the action of the City Council of the City of Dallas in adopting said Ordinances No. 14011 and No. 14012 and the Resolution of March 19, 1973, and but for the fact that the Historic Landmark Preservation Committee was to consider recommending whether or not the area covered by PD No. 19 should be recommended for designation as a Historic Landmark District and for the fact that the City Plan Commission of the City of Dallas has called a public hearing for June 7, 1973, for the purpose of considering whether it should recommend that the area covered by PD No. 19 be designated as a Historic Landmark District under the provisions of the Zoning Ordinance of the City of Dallas."

■ No findings of fact or conclusions of law were requested or filed. Under such circumstances it becomes our duty to affirm the judgment of the trial court if it can be sustained on any reasonable theory supported by the evidence. Bishop v. Bishop, 359 S.W.2d 869 (Tex.Sup.1962); Seaman v. Seaman, 425 S.W.2d 339 (Tex. Sup.1968).

The City has brought forward four points of error. The first two points are (1) that the trial court erred in granting the writ of mandamus because the Dallas City Council, pursuant to a valid exercise of the police power, had lawfully ordered that no building permits be issued in the PD–19 area until the matter of its preservation was resolved; (2) no vested rights can be acquired to avoid the valid exercise of the police power.

Neither appellants nor appellee in their briefs mentioned the fact that the City of Dallas is a home rule city. This Court, however, will take judicial notice of that fact. In the case of City of Dallas v. Meserole, 155 S.W.2d 1019 (Tex.Civ.App.— Dallas, 1941, writ ref'd, w. o. m.), it is stated:

"The Legislature (Art. 1175) enumerated the powers of cities, such as Dallas, adopting special charters, to exercise local powers of self-government, free and independent of further legislative grants."

Under Article 1175, Vernon's Revised Civil Statutes, home rule cities are given the following power:

"26. To divide the city in zones or districts, and to regulate the location, size, height, bulk and use of buildings within such zones or districts, and to establish building lines within such zones or districts or otherwise, and make different regulations for different districts and thereafter alter the same. * * *"

Article 1176 explains the powers of a home rule city even further when it states:

"The enumeration of powers hereinabove made shall never be construed to preclude, by implication or otherwise, any such city from exercising the powers incident to the enjoyment of local self-government, provided that such powers shall not be inhibited by the State Constitution."

Article 1011a of Vernon's Revised Civil Statutes concerns the general law city's power to zone, and it reads as follows:

"For the purpose of promoting health, safety, morals, and for the protection and preservation of places and areas of historical and cultural importance and significance, or the general welfare of the community, the legislative body of cities and incorporated villages is hereby empowered to regulate and restrict the

height, number of stories, and size of buildings, and other structures, the percentage of lot that may be occupied, the size of the yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, or other purpose; and, in the case of designated places and areas of historic and cultural importance, to regulate and restrict the construction, alteration, reconstruction, or razing of buildings and other structures."

As can be seen from these statutes, cities in the State of Texas, whether they be home rule or of the general law type, have a considerable amount of independent power in the realm of zoning. The Supreme Court of Texas in the case of Ellis v. City of West University Place, 141 Tex. 608, 175 S.W.2d 396 (1943), stated that municipal corporations have the right under the police power, to safeguard the health, comfort, and general welfare of the public by reasonable regulations. The Court went on to say at page 397, "It is also equally well settled that zoning ordinances fall within the police power of municipalities." The Court then citing and quoting from Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475 (1934) said that such power " 'may be exerted to regulate the use, and where appropriate or necessary prohibit the use, of property for certain purposes in aid of the public health, morals, safety and general welfare, and that the constitutional limitations form no impediment to its exertion where the enactment is reasonable and bears a fair relationship to the object sought to be attained.' "

■ A city such as Dallas would be entitled under its zoning authority to zone a particular area as a historic district. Art. 1175, supra. However, in the instant case, no such zoning ordinance had been enacted at the time appellee filed his application for a building permit. Subsequently, however, the City did enact a resolution prohibiting the issuance of building permits

until such time as the matter of rezoning the Swiss Avenue area was resolved. Appellant City takes the view that this action was authorized under the City's police power. With this contention we agree. Appellants cite three Texas cases in support of their contention: City of Dallas v. Meserole, supra, City of Dallas v. Meserole Bros., 164 S.W.2d 564 (Tex.Civ.App.—Dallas, 1942, writ ref'd, w. o. m.) and Westwood Development Co. v. City of Abilene, 273 S.W.2d 652 (Tex.Civ.App.—Eastland, 1954, writ ref'd, n. r. e.). In each of these cases, the cities involved were in the process of annexing certain unzoned territory. Also in each case the city had passed an emergency zoning ordinance pursuant to the police power prohibiting the issuance of building permits. The purpose of the Cities in taking such action in those cases was to allow time for the annexation and zoning to be completed and to obviate the possibility of destruction of the zoning plans before they were in existence. It would be a very narrow construction of a city's police power to say that it could prohibit the issuance of building permits only under circumstances where annexation or even comprehensive zoning was involved. We do not believe the police power of cities is subject to such limitation. Appellee argues that the above three cases are distinguishable on the facts. We do not agree. The three cases stand for the proposition that a city under the authority of its police power can maintain the status quo of an area when there is a zoning plan under consideration or pending at the time a party applies for a building permit.

Under Article 1175, section 26, Vernon's Revised Civil Statutes, the home rule cities in Texas have been given broad police power in the area of zoning. Under the broad powers conferred by the statute we think the resolution adopted by the City Council amounted to a valid exercise of the police power granted therein. Two California cases very similar to this case, have upheld the power of a city to pass resolutions prohibiting the issuance of

building permits under its police power where rezoning was under consideration. See Hunter v. Adams, 180 Cal.App.2d 511, 4 Cal.Rptr. 776 (1960), and City of Los Angeles v. Superior Court, 34 Cal.Rptr. 161 (Cal.App.1963). Although we have been cited no Texas case, nor have we found one, stating that this type of resolution falls within the city's police power, we feel the broad language of Article 1175, supra, is sufficient to authorize the Dallas City Council to enact a resolution prohibiting the further granting of building permits pending consideration of the question of rezoning.

In today's modern, complex, ever-changing society the police power delegated to the cities must of necessity be interpreted broadly. In the case of Connor v. City of University Park, 142 S.W.2d 706 (Tex. Civ.App.—Dallas, 1940, error ref'd), the Dallas Court of Civil Appeals came to the heart of the matter by using the following language from the Supreme Court of California in the case of Miller v. Board of Public Works, 195 Cal. 477, 234 P. 381, 38 A.L.R. 1479 (1925): " ' * * * the police power, as such, is not confined within the narrow circumscription of precedents, resting upon past conditions which do not cover and control present day conditions obviously calling for revised regulations to promote the health, safety, morals, or general welfare of the public; that is to say, as a commonwealth develops politically, economically, and socially, the police power likewise develops, within reason, to meet the changed and changing conditions. What was at one time regarded as an improper exercise of the police power may now, because of changed living conditions, be recognized as a legitimate exercise of that power. This is so because: "What was a reasonable exercise (of this power) in the days of our fathers may to-day seem so utterly unreasonable as to make it difficult for us to comprehend the existence of conditions that would justify same; what would by our fathers have been rejected as unthinkable is to-day

accepted as a most proper and reasonable exercise thereof." ' "

█ It is axiomatic that all property is held subject to the lawful exercise of the police power. Lombardo v. City of Dallas supra; City of San Antonio v. Pigeonhole Parking of Texas, 158 Tex. 318, 311 S.W. 2d 218 (1958). An applicant obtains no vested right by the mere filing for a building permit. Connor v. City of University Park, supra; City of University Park v. Rahl, 36 S.W.2d 1075 (Tex.Civ.App.—Dallas, 1931, writ dism'd).

█ Moreover, Texas courts have held that property and its owner are subject to a zoning ordinance adopted subsequent to an application for a building permit, and subsequent to his suit after refusal of permit. McEachern v. Town of Highland Park, 34 S.W.2d 676 (Tex.Civ. App.—El Paso, 1931, affirmed McEachern v. Town of Highland Park, 124 Tex. 36, 73 S.W.2d 487 (1934); Town of Renner v. Wiley, 458 S.W.2d 516 (Tex.Civ.App.— Dallas, 1970, no writ); McClain v. City of Ennis, 340 S.W.2d 66 (Tex.Civ.App.— Waco, 1960, no writ). We are of the opinion that the same rule should apply to the resolution passed by the City Council in the instant case as was applied to zoning ordinances in the above cases.

We quote from 50 A.L.R.3d 607:

"In most jurisdictions it is clear that, as a general rule, the denial of an application for a building permit may be based on a zoning regulation enacted or becoming effective after the application was made, or to state the rule conversely, a zoning regulation may be retroactively applied to deny an application for a building permit, even though the permit could have been lawfully issued at the time of application."

We believe it would be inconsistent to allow a city such as Dallas the power to make zoning regulations, and then deny it the power to keep those impending regula-

tions from being destroyed by an individual or group seeking to circumvent the ultimate result of the rezoning. As was ably stated in City of Dallas v. Meserole, supra:

> "It would seem a rather strict application of law to hold that a city, granted power to annex adjacent territory on petition of a majority of its citizens, and then, forsooth, in the interim, before the necessary steps are taken to annex such territory, and properly zone the territory, which necessarily takes some time, the will of the majority and the evident intent of the City to annex and lawfully zone the territory be defeated by a lone objector to the annexation and zoning, by construction of buildings on his property, inimical to the general zoning ordinances of such city."

The authorization of any other rule would, in our opinion, frequently sanction a race of diligence to the city hall by property owners attempting to place structures upon their land that would be out of accord with the surrounding property under the new zoning laws. This result would be an anathema upon a city's zoning authority. It is apparent, and one Texas court has taken judicial notice of the fact, that the passage of a zoning ordinance requires considerable length of time for completion. In City of Dallas v. Meserole Bros., supra, we find this language:

> "* * * the courts take judicial notice of the fact that it will take much time to work out the details of a zoning plan, and that it will be destructive of the plan if, during the period of incubation, persons seeking to evade its operation should be permitted to enter upon a course of construction which might progress so far as to defeat in whole or in part the ultimate execution of the plan."

The same point was emphasized in the case of Downham v. City Council of Alexandria, 58 F.2d 784 (D.C.Va.1932) where the Court stated:

> "* * * it seems to the court that it would be a rather strict application of the law to hold that a city, pending the necessary preliminaries and hearings incident to proper decisions upon the adoption and the terms of a zoning ordinance, cannot, in the interim, take reasonable measures temporarily to protect the public interest and welfare until an ordinance is finally adopted. Otherwise, any movement by the governing body of a city to zone would, no doubt, frequently precipitate a race of diligence between property owners, and the adoption later of the zoning ordinance would in many instances be without effect to protect residential communities—like locking the stable after the horse is stolen."

Our holding in this case should not be construed so as to authorize a city's carte blanche denial of building permits anytime it contemplates changing the zoning in a given area. However, when as here, a city has placed its zoning machinery in operation before the permit is applied for and the impetus of the proposed new zoning is directed at and brought about by concern over the future general welfare of a particular area, i. e., Swiss Avenue, then we do not feel that the city's action in maintaining the status quo for a reasonable time until the rezoning can be completed can be considered as an arbitrary or capricious or unreasonable exercise of its police power. This particular police power function must be exercised reasonably. See City of Dallas v. Urbish, 252 S.W. 258 (Tex.Civ.App.—Dallas, 1923, writ dism'd, w. o. m.); Lombardo v. City of Dallas, supra; City of Bellaire v. Lamkin, 159 Tex. 141, 317 S.W.2d 43, 66 A.L.R. 2d 1289 (1958); City of University Park v. Benners, Tex., 485 S.W.2d 773 (1972). In the instant case we feel the denial of building permits for a reasonable time pending further consideration of the matter by the City Council was authorized by the Statute. It is our opinion that under the record presented here a reasonable time

had not lapsed at the institution and trial of this suit.

We quote from Lombardo v. City of Dallas, supra (Tex.Civ.App., 47 S.W.2d 495, p. 497):

"The authorities are unanimous in holding that courts will presume that the legislative body, in enacting ordinances, acted within their authority, and the burden rests upon those who challenge their validity to show that, in the matter called in question, the action of the municipal authorities was arbitrary, unreasonable, and without substantial relation to the public safety, health, morals, or general welfare."

We hold appellee has not discharged his burden in this regard.

Appellee contends that the City Council by adopting the resolution was in effect attempting to change the zoning by resolution and not following the procedure provided for by its zoning ordinance and by State statute, and cites Smart v. Lloyd, 370 S.W.2d 245 (Tex.Civ.App.—Texarkana, 1963, no writ); Wallace v. Daniel, 409 S.W.2d 184 (Tex.Civ.App.—Tyler, 1966, writ ref'd, n. r. e.); Appolo Development, Inc. v. City of Garland, 476 S.W.2d 365 (Tex.Civ.App.—Dallas, 1972, writ ref'd, n. r. e.); and Bolton v. Sparks, 362 S.W.2d 946 (Tex.Sup.1962). We are of the opinion these cases are not in point to the issues in the case at bar.

The only evidence presented by appellee in support of his application for a writ of mandamus other than the stipulations of all parties, consisted of Ordinances No. 14011 and 14012 adopted March 12, 1973, and the resolution of the Dallas City Council adopted March 19, 1973. As we view the record, the judgment fails to find support upon either the law or the evidence and must therefore be reversed. Appellants' points one and two are sustained.

Accordingly, the judgment of the trial court is reversed and judgment is here rendered that the petition for mandamus be denied.