Don T. HAYNES et ux., Appellants,

v.

CITY OF QUANAH, Appellee.

No. 9213.

Court of Civil Appeals of Texas, Amarillo.

Dec. 23, 1980.

Rehearing Denied Jan. 28, 1981.

Neal & McBeath, Bill Neal, Vernon, Dan Mike Bird, Quanah, for appellants.

Mikkelsen & Jeffrey, Douglas C. Jeffrey, III, Vernon, for appellee.

DODSON, Justice.

After a jury trial, the trial court rendered judgment permanently enjoining Don T. Haynes and wife, Marijohn, from operating a business on their property located in the City of Quanah. In its action, the City alleges that the Haynes' business use of the property in question violates its valid temporary zoning classification restricting the use of the property to "R–1 single family dwelling purposes only." Appealing from the judgment, the Haynes maintain that the alleged temporary zoning classification is invalid for several reasons. Concluding that the alleged temporary zoning classification is invalid, we reverse the judgment and dissolve the injunction.

On 8 June 1965, the city enacted a comprehensive zoning ordinance. By an annexation ordinance dated 14 April 1970, the city annexed certain adjacent territory including the property in question. The Haynes acquired the property in question in December of 1972, and began business use of the property in approximately September of 1974. On 16 July 1979, the city brought this action to enjoin the Haynes operating their business, alleging that the property in question is validly zoned for "R–1 single family dwelling purposes only" by virtue of article III, section 1, of the 8 June 1965 comprehensive zoning ordinance.

Article III, section 1 of the 1965 zoning ordinance provides:

All territory annexed to the City hereafter shall be temporarily classified for R–1 single family dwelling purposes only until permanently zoned by the governing body of the City. The City Planning and Zoning Commission shall, as soon as practicable after annexation of any of the territory to the City, institute proceedings on its own motion to give the newly annexed territory a permanent zoning, and the procedure to be followed shall be the same as is provided by law for the adoption of original zoning regulations.

First, the Haynes contend that the purported temporary zoning restriction imposed on the property by annexation is invalid and unenforceable because at the time the property was annexed, the city did not comply with the zoning notice and hearing requirements of article 1011d Tex.Rev.Civ. Stat.Ann. (Vernon 1963), the notice and hearing prerequisites of the due process clause of the 14th amendment of the United States Constitution, and article 1, section 19 of the Texas Constitution. They further maintain that, during the nine-year period from annexation in 1970 to the time this action was filed in 1979, the city made no effort to provide permanent zoning for the annexed area "as soon as practicable after annexation" as prescribed by the mandatory provisions of article III, section 1 of the 1965 zoning ordinance.

Conversely, the city contends that the temporary zoning restriction is valid and enforceable because it is not required to comply with the notice and hearing requirements to impose such a zoning restriction on the property in question; that it had the power and authority to determine the "practicable" time for permanently zoning the annexed area; and that it justifiably withheld the decision to permanently zone the annexed area for nine years because its population decreased rather than increased during the period. We do not agree with these contentions.

The City of Quanah is granted zoning power by virtue of Tex.Rev.Civ.Stat.Ann. arts. 1011a *et seq.* (Vernon 1963 & Vernon Supp. 1980–1981).[1] In *Bolton v. Sparks,* 362 S.W.2d 946 (Tex.1962), the court determined, among other things, that when a city enacts an emergency or temporary zoning classification, such zoning classification is invalid unless the city fully complies with

---

1. The City of Quanah is not a home rule city as set forth in Tex.Rev.Civ.Stat.Ann. art. 1165 (Vernon 1963).

the notice and hearing requirements of article 1011d and any other applicable zoning notice and hearing requirements prescribed by articles 1011e and 1011f. *Id.* at 949–50. Article 1011d provides:

The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established, and enforced, and from time to time amended, supplemented, or changed. *However, no such regulation, restriction, or boundary shall become effective until after a public hearing in relation thereto*, at which parties in interest and citizens shall have an opportunity to be heard. *At least 15 days' notice* of the time and place of such hearing shall be published in an official paper, or a paper of general circulation, in such municipality (emphasis added).

In this instance, the record shows that when the city annexed the property in question in 1970, it complied with the statutory notice and hearing requirements for annexation; however, it did not purport to comply with the additional notice and hearing requirements of article 1011d.

In support of its position, the city primarily relies on *City of Lubbock v. Stubbs*, 160 Tex. 111, 327 S.W.2d 411 (1959); *White v. City of Dallas*, 517 S.W.2d 344 (Tex.Civ. App.—Dallas 1974, no writ); *City of Dallas v. Crownrich*, 506 S.W.2d 654 (Tex.Civ.App. —Tyler 1974, writ ref'd n.r.e.); *Huguley v. Board of Adjustment*, 341 S.W.2d 212 (Tex. Civ.App.—Dallas 1960, no writ); *Westwood Development Company v. City of Abilene*, 273 S.W.2d 652 (Tex.Civ.App.—Eastland 1954, writ ref'd n.r.e.); *City of Dallas v. Meserole Bros.*, 164 S.W.2d 564 (Tex.Civ. App.—Dallas 1942, writ ref'd w.o.m.); and *City of Dallas v. Meserole*, 155 S.W.2d 1019 (Tex.Civ.App.—Dallas 1941, writ ref'd w.o. m.).

*White, Huguley* and *Stubbs* are "nonconforming use" cases predicated on valid permanent zoning enacted by the respective cities. Thus, the decisions in such cases do not apply in this instance.

In *City of Dallas v. Meserole*, 155 S.W.2d 1019, the city enacted a temporary zoning ordinance for all newly annexed areas. The ordinance provided, among other things, that the building inspector shall issue no permit for the construction of a building in the newly annexed area other than a permit for the construction of certain types of residential buildings; and that application for any other use shall be made to the building inspector of the city, referred by him to the City Plan Commission for consideration and recommendation to the City Council, which latter body would finally pass on the application.

After the city had annexed his property and initiated proceedings to provide a permanent zoning plan for the annexed area, Mr. Meserole desired to develop his property for commercial purposes. Accordingly, he sought to enjoin the city from enforcing the temporary zoning ordinance. In sustaining enforcement of the ordinance the Court stated:

We think, when the Citizens' petition was filed with the City and the Council assented to the annexation, potential jurisdiction was then attached to the City; at least, such action extended the police power to hold the area in status quo, pending final determination of annexation and zoning.

*Id.* at 1022. The opinion shows that the city annexed Meserole's property on 21 August 1941 and enacted the temporary zoning ordinance on the same day. *Id.* at 1020–21. The court's opinion is dated 17 October 1941.

*City of Dallas v. Meserole Bros.*, 164 S.W.2d 564, is a subsequent action by the same parties involving the same property. In this case, the Meserole brothers brought an action for a mandatory injunction for the issuance of permits authorizing construction of commercial buildings on the property in question. The trial court granted the mandatory injunction. In rendering judgment for the city the court stated:

So, for the reasons stated and further, because, pending the appeal, the temporary zoning ordinance under which the

court below acted has been *superseded by a permanent zoning ordinance* in which the territory involved has been zoned exclusively for residential purposes, the judgment of the court below in cause No. 13,278, *City of Dallas, et al., Appellants, v. Meserole Brothers, Appellee,* is reversed and judgment is here rendered for the appellants (emphasis added).

*Id.* at 569. The court's opinion shows that the permanent zoning ordinance was enacted on 18 February 1942. *Id.* at 567. Thus, by rendering judgment for the city, the court allowed the city to maintain the status quo in the annexed area for approximately six months, pending enactment of the permanent zoning plan for the area.

In *Westwood Development Co. v. City of Abilene, supra,* the city proceeded to annex the area in question and provide temporary zoning for the area. The proposed temporary zoning ordinance essentially contained the same provisions as the temporary zoning ordinance before the court in the *Meserole* cases. The city sought to enjoin Westwood Development from constructing a commercial building on property within the annexed area. The trial court granted the injunction. While the appeal was pending, the city completed the zoning procedure and enacted the temporary zoning ordinance. In sustaining the injunction, the court stated:

> The passage on first reading of the ordinance purporting to annex to the City of Abilene the property belonging to appellants vested in the City jurisdiction under its police power to hold the area in status quo pending final determination of annexation and zoning. To hold otherwise would destroy the right of the City to plan the zoning of annexed areas, and would permit a property owner in such an area to "enter upon a course of a construction which might progress so far as to defeat in whole or in part the ultimate execution of the plan." (*Quoting City of Dallas v. Meserole Bros., supra,* at 567).

By sustaining the injunction the court, in effect, permitted the city to maintain the status quo in the annexed area pending implementation of the temporary zoning ordinance.

*City of Dallas v. Crownrich, supra,* is a "zoning change" case, where the city employed its building permit procedure to maintain the status quo in an area of the city pending enactment of a "Historical Landmark Preservation Ordinance." The existing zoning classification for the area in question allowed one, two and multi-family structures to be erected, including low and high-rise apartments. Mr. Crownrich made an application to the city for a permit to construct a high-rise apartment building in the area which complied with the existing zoning classification. The city denied the building permit. Mr. Crownrich brought a mandamus action to compel the city to grant the building permit, which the trial court granted. In reversing the trial court and denying the mandamus, the court stated:

> Our holding in this case should not be construed so as to authorize a city's carte blanche denial of building permits anytime it contemplates changing the zoning in a given area. However, when as here, a city has placed its zoning machinery in operation before the permit is applied for and the impetus of the proposed new zoning is directed at and brought about by concern over the future general welfare of a particular area, i. e., Swiss Avenue, then we do not feel that the city's action in maintaining the status quo for a reasonable time until the rezoning can be completed can be considered as an arbitrary or capricious or unreasonable exercise of its police power. This particular police power function must be exercised reasonably. (Citing authorities). In the instant case we feel the denial of building permits for a reasonable time pending further consideration of the matter by the City Council was authorized by the Statute. *It is our opinion that under the record presented here a reasonable time had not lapsed at the institution and trial of this suit* (emphasis added).

*Id.* at 660. The court's opinion shows that the city staff began preparation of the preservation ordinance in June of 1972 and that

the case was filed on 10 May 1973 and tried one month later. *Id.* at 655–56.

■ When we view the decisions in the *Meserole* cases and the *Westwood Development* case in light of the decisions in *Bolton* and *Crownrich*, we discern the principle that when the city imposes temporary zoning in a newly annexed area by complying with all applicable statutory zoning notice and hearing requirements and initiates proceedings to enact a permanent zoning plan for the annexed area, the city may, by a valid building permit procedure, maintain the status quo in the annexed area for a reasonable period of time to enable the city to finalize and enact the proposed and pending permanent zoning plan for the annexed area. However, the circumstances of the case before us, do not bring it within the stated principle.

■ In this instance, when the city annexed the property in question in 1970, it did not comply with the applicable statutory zoning notice and hearing requirements. The record further shows that during the nine-year period in question, the city made no efforts to initiate, propose or enact a permanent zoning plan for the annexed area. In this regard, we further point out that the jury found, in response to special issue number three, that the city "failed to proceed as soon as practicable after annexation to give to the area in question permanent zoning." Although the issue and the jury's answer thereto are not challenged in this court, we find ample probative evidence to support the jury's answer. And, under the circumstances of this case, we conclude that, as a matter of law the purported temporary zoning classification imposed on the property in question is invalid. Accordingly, the judgment of the trial court is reversed and the injunction is dissolved.