**CITY OF JACKSON, MISSISSIPPI, Plaintiff,**

v.

**LAKELAND LOUNGE OF JACKSON, INC., Defendant.**

**Civ. A. No. J92–0283(W).**

United States District Court,
S.D. Mississippi,
Jackson Division.

July 9, 1992.

Craig Brasfield, Deputy City Atty., Jackson, Miss., for plaintiff.

Matthew Moore, Jackson, Miss., for defendant.

## ORDER GRANTING PRELIMINARY INJUNCTION

WINGATE, District Judge.

Before the court is the motion of the defendant, Lakeland Lounge of Jackson, Inc., seeking a temporary restraining order or preliminary injunction to prohibit the City of Jackson, Mississippi, from continuing a pattern and course of conduct which interferes with the (defendant's) free exercise of a right protected by the First Amendment to the United States Constitution.[1] The key question here under the four factors in *Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir.1974), which determine the propriety of issuing injunctive relief, is whether the City of Jackson may refuse to issue the defendant the nec-

---

1. The First Amendment to the United States Constitution provides as follows:

 Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the free- dom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

essary permits for doing business, or otherwise interfere with the defendant's ability to carry on its business of "adult entertainment" in the form of topless dancing, while the City is simultaneously engaged in the process of adopting a zoning ordinance which would preclude the defendant from operating out of its present location.

## THE PARTIES

The parties are the City of Jackson, Mississippi, (The City), a municipal corporation organized and existing under the laws of Mississippi, and Lakeland Lounge of Jackson, Inc., a Mississippi Corporation doing business at 1925 Lakeland Drive in Jackson, Mississippi.

## JURISDICTION

The case was removed from state court to this court in accordance with 28 U.S.C. § 1441.[2] Jurisdiction is predicated upon 28 U.S.C. § 1331 (federal question)[3] and 28 U.S.C. § 1343(a) (cases asserting violation of civil rights).[4]

## STATEMENT OF THE CASE

Plaintiff, City of Jackson, filed this cause of action in the Chancery Court for the First Judicial District of Hinds County, Mississippi, alleging: (a) that there is a pending amendment to its zoning ordinance which would restrict "adult entertainment" establishments that allow topless dancing to areas zoned I–1, light industrial zoning, within the City and over one thousand feet from any church, school, park, playground, or residential area; (b) that Lakeland Lounge is located on property zoned C–3 (general commercial) and is providing adult entertainment in the form of topless dancing; and (c) that inasmuch as the pending amendment to the City's zoning ordinance would not permit such activities on property zoned C–3, Lakeland Lounge is violating the pending amendment to the zoning ordinance. The City's state court complaint sought to prevent Lakeland Lounge from providing adult entertainment in the form of topless dancing at 1925 Lakeland Drive, Jackson, Mississippi, the present location of the establishment.

After this lawsuit was removed from state court to this court, the City of Jackson submitted a motion to remand the case back to state court pursuant to 28 U.S.C. § 1447(c).[5] Alternatively, the city asked

---

**2.** Title 28 U.S.C. § 1441(a) provides:

Except as other wise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

Title 28 U.S.C. § 1441(b) provides:

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

**3.** 28 U.S.C. § 1331 provides:

The district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States.

**4.** 28 U.S.C. § 1343(a)(3) provides:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

**5.** 28 U.S.C. § 1447(c) provides:

A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

this court to abstain, relying on the traditional abstention doctrines applied when there are parallel actions in state and federal court.[6] The motion to remand and the alternative motion to abstain were both denied in the court's bench opinion entered on the date of hearing, June 11, 1992. The matter is now before the court pursuant to the aforesaid motion of defendant Lakeland for injunctive relief.

### PERTINENT FACTS

On January 28, 1992, the City of Jackson amended its zoning ordinance to regulate the operation of adult entertainment businesses by requiring such businesses to locate in I–1 light industrial zoning districts more than 1,000 feet from a church, school, park, playground or residential area. Pursuant to § 21–13–11,[7] Miss.Code Ann., the amendment went into effect on February 27, 1992. The amendment granted an exception to those adult entertainment businesses existing prior to the adoption of the amendment to the zoning ordinance.[8] The amendments were prompted by recommendations from the City Planning Department and the City Attorney's office who were persuaded by certain studies conducted throughout the United States that adult entertainment businesses impacted negative secondary effects on the areas where they are located.

On February 12, 1992, Lakeland Lounge applied for a building permit to expand its operational space. At that time Lakeland Lounge had not opened for business and the City's amendment to its zoning ordinance had not yet become effective. While applying for the building permit, the agent for Lakeland Lounge let it be known that the establishment would be offering "adult entertainment." Therefore, because of the pending ordinance, the City of Jackson refused to issue Lakeland Lounge a building permit for expansion of the premises.[9]

On February 20, 1992, Lakeland Lounge filed a complaint in the County Court of the First Judicial District of Hinds County, Mississippi, seeking injunctive relief which would require the City of Jackson to issue the building permit for expansion of the premises. The County Court denied Lakeland Lounge's request for injunctive relief, so, on February 27, 1992, the same day the City's ordinance became effective, Lakeland Lounge sued the City of Jackson in

---

**6.** *See Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Colorado River Water Conservation District v. U.S.,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); and *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

**7.** Section 21–13–11 states:

Every ordinance passed by the governing body of a municipality, except as is otherwise provided by law, shall be certified by a municipal clerk, signed by the mayor or a majority of all the members of the governing body, recorded in the ordinance book, and published at least one (1) time in some newspaper published in such municipality, or, if there be no such newspaper, then in a newspaper within the county having general circulation in said municipality, or, if there be no newspaper published in or having general circulation in same, then in any newspaper published in the State of Mississippi having general circulation in said county; and all of same ordinance may be made as provided in Section 21–17–19. No ordinance shall be in force for one (1) month after its passage; however, any ordinance for the immediate and temporary preservation of the public peace, health or safety or for other good cause, which is adopted by unanimous vote of all members of the governing body, may be made effective from and after its passage by a unanimous vote of all members of the governing body. However, in such cases, such ordinance shall contain a statement of reason why it is necessary that same become immediately effective.

. . . . .

**8.** In September of 1991 a nightclub known as "Tiffany's" opened for business in the City of Jackson offering adult entertainment in the form of topless dancing; a few weeks later a second establishment called the "Longhorn Gentlemen's Club" began providing the same form of adult entertainment.

**9.** According to Lakeland Lounge, the City has issued a permit for sale of beer on the premises and a building permit for internal structural changes, but refuses to issue the permit for expansion; moreover, the City insists that Lakeland Lounge may not open for business without first obtaining a Certificate of Occupancy, another document the City refuses to issue because of the nature of the defendant's business.

federal district court under cause number J92–0123(B). The federal court complaint sought a declaratory judgment that the ordinance in question was unconstitutional. On April 30, 1992, the Honorable William H. Barbour, Jr., United States District Judge for the Southern District of Mississippi, in cause number J92–0123(B), ruled that the ordinance in question was unconstitutional, stating that the City of Jackson had no factual basis upon which to base its zoning amendment. Judge Barbour found nothing to support the City's assertion of negative or detrimental secondary effects which the operation of adult entertainment establishments might have on the surrounding community. Judge Barbour also found that the amendment to the zoning ordinance failed to provide reasonable alternative sites for the communication of protected speech. The City of Jackson, its elected officials, officers, agents and employees were enjoined from enforcing any provisions of the amendments to the zoning ordinance adopted January 28, 1992.

After Judge Barbour issued his decision, counsel for the City handed a letter from Mayor Kane Ditto to counsel for Lakeland Lounge. This letter was intended by the City to serve as notice to Lakeland Lounge of the City's continuing efforts to amend its zoning ordinance by lessening the separation requirements.[10] The letter states that the contemplated amendment would still restrict the location of adult entertainment businesses to areas zoned I–1, light industrial, and from areas zoned C–3 such as Lakeland Lounge currently occupies.

After Judge Barbour's ruling in cause number J92–0123(B) on April 30, 1992, and the entry of final judgment on May 1, 1992, Lakeland Lounge continued its efforts to obtain a building permit for expansion of its present location. An additional controversy arose under § A103.9.1[11] of the City's Standard Building Code whether Lakeland was obligated to obtain a certificate of occupancy before Lakeland Lounge could open for business. The City Building Official, Gary L. Hathorn, insisted that a change in use of the building had occurred which gave him the authority to require an application for a certificate of occupancy and drawings of the existing building. According to Hathorn's testimony, the Lakeland Lounge location had previously been approved for patron dancing; the change to topless dancing was, in Hathorn's estimation, a sufficient change in use to require Lakeland Lounge to apply for a certificate of occupancy. Hathorn sent Herbert Cannon, a building inspector employed by the City's Department of Planning and Development, Division of Code Services, to inspect the Lakeland Lounge premises and ascertain whether there were violations of the building code. According to Cannon's testimony, violations existed in the form of structural changes and renovation for which no permit had been issued.

On May 6, 1992, notwithstanding the dispute over the certificate of occupancy and the City's assertions that unauthorized structural changes had been made to the premises, Lakeland Lounge opened for business. In a letter from counsel for Lakeland Lounge to the City Building Official dated May 8, 1992, counsel for Lakeland Lounge informed the City that his client had opened for business. Lakeland's counsel stated that his client disagreed with the Building Official's conclusion that a certificate of occupancy must be ob-

---

**10.** According to the City, the Planning Department not only considered new separation requirements, that is, the minimum distances to exist between "adult entertainment" businesses and certain "sheltered" entities, but also drafted new definitions of the terms "churches," "schools," "parks," and "playgrounds" in order to clear up any ambiguities that might occur when these terms are interpreted. On May 12, 1992, the City Zoning Administrator, William Hardin, reported to the City Council on the progress being made regarding the drafting of a new amendment to the City's zoning ordinance.

**11.** Section A103.9.1 of the Standard Building Code adopted by the City of Jackson provides:

A new building shall not be occupied or a change made in occupancy or the nature or the use of a building or part of a building until after the Building Official has issued a certificate of occupancy. Said certificate shall not be issued until all required fire protection systems have been tested and approved.

tained. According to Lakeland's counsel, there had been no change in use which would require the certificate of occupancy; therefore, section A103.9.1 of the Standard Building Code did not apply.

On May 13, 1992, the City of Jackson filed complaint numbered 49–207 in the Chancery Court for the First Judicial District of Hinds County, Mississippi. The complaint charged Lakeland Lounge with operating in violation of the building code by failing to obtain a certificate of occupancy prior to doing business. The City sought an injunction to prohibit Lakeland Lounge from doing business as a topless dancing lounge.

On May 18, 1992, Lakeland Lounge filed its notice of removal of the City's complaint to federal district court pursuant to 28 U.S.C. § 1441, contending that the complaint presented a federal question under the First Amendment. Upon removal to this court, Lakeland Lounge filed a counterclaim and its own motion for injunctive relief. The City responded with a motion to remand the matter to the Chancery Court for the First Judicial District of Hinds County, which this court denied in a bench opinion on June 10, 1992.

## LAKELAND LOUNGE'S MOTION FOR A TEMPORARY RESTRAINING ORDER OR, ALTERNATIVELY, FOR PRELIMINARY INJUNCTION

Lakeland Lounge asserts that the City's lawsuit is but a masked effort to prohibit a protected speech activity under the auspices of a zoning ordinance which has not yet been adopted. According to Lakeland Lounge, the City's broad attack includes plans to allege criminal violations of the building code, to refuse to issue the permit which would enable the lounge to enlarge its premises at 1925 Lakeland Drive, and to deny to it a certificate of occupancy. Therefore, says Lakeland Lounge, should the court refuse to issue the injunction, the City will file criminal affidavits, withhold granting the business a building permit and certificate of occupancy, and take other actions designed to interfere with or prohibit Lakeland Lounge from engaging in a constitutionally protected speech activity.

*Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir.1974) is the most often cited case for the four factors the court must consider when determining whether to issue a temporary restraining order (TRO) or preliminary injunction. The four factors are as follows:

(1) a substantial likelihood that plaintiff will prevail on the merits;

(2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted;

(3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may do to the defendant; and

(4) that granting the preliminary injunction will not disserve the public interest.

*See Plains Cotton Cooperative Association v. Goodpasture Computer Service, Inc.*, 807 F.2d 1256, 1259 (5th Cir.1987); *Mississippi Power and Light v. United Gas Pipe Line*, 760 F.2d 618 (5th Cir.1985); *Treasure Salvors v. Unidentified Wrecked, Etc.*, 640 F.2d 560, 568 (5th Cir. 1981).

### a. *Substantial Likelihood of Success on the Merits*

Lakeland Lounge states that there is no dispute that topless dancing is expressive speech which is entitled to protection under the Free Speech Clause of the First Amendment.[12] *See Schad v. Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (holding, in a case involving nude dancing, that entertainment, as well as political and ideological speech, is protected and that an entertainment program may not be prohibited solely because it displays the nude human figure); and *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (holding that "[a]lthough the customary "barroom" type of nude dancing may involve only the barest minimum of protected expression, we recognized in *California v. LaRue*, 409

---

**12.** For text of the First Amendment of the United States Constitution, see footnote 1.

U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342 (1972), that this form of entertainment might be entitled to First and Fourteenth Amendment protection under some circumstances."). In spite of this protection, says Lakeland Lounge, the City of Jackson continues to interfere with the protected speech activity, claiming that an ordinance will soon be promulgated which will prohibit adult entertainment at 1925 Lakeland Drive. In support of this contention, Lakeland points to the letters, the affidavit, and the in-court testimony of Gary L. Hathorn, the City Building Official. Hathorn testified that no building permit and no certificate of occupancy will be issued so long as Lakeland Lounge continues to provide adult entertainment in the form of topless dancing. Meanwhile, the City has no lawfully adopted ordinance which regulates such adult entertainment. Therefore, says Lakeland Lounge, there is no basis for the City's refusal to issue either the requested building permit or the certificate of occupancy other than the City's desire to stop a constitutionally protected speech activity.

The City of Jackson responds that a principle of law called the "pending ordinance doctrine" applies to prevent Lakeland Lounge from doing business as an adult entertainment establishment in its current location. According to this doctrine, argues the City, a land use which will not be permitted once a pending ordinance is fully and finally adopted also will not be permitted during the pendency of the ordinance.

According to the City, many jurisdictions have adopted the "pending ordinance doctrine." The City has cited at least forty cases from the states of California, Connecticut, Florida, Georgia, Illinois, Michigan, Minnesota, Nebraska, New York, New Jersey, North Carolina, Louisiana, Ohio, Pennsylvania, Rhode Island, South Carolina and Texas which purport to apply this doctrine. *See Felice v. City of Inglewood,* 84 Cal.App.2d 263, 190 P.2d 317 (1948); *Wheat v. Barrett,* 210 Cal. 193, 290 P. 1033 (1930); *McCormick v. Stratford Planning & Zoning Commission,* 146 Conn. 380, 151 A.2d 347 (1959); *Smith v. City of Clearwater,* 383 So.2d 681 (Fla.1980); *Corey Outdoor Advertising, Inc. v. The Board of*

*Zoning Adjustments of the City of Atlanta,* 254 Ga. 221, 327 S.E.2d 178 (1985); *Chicago Title & Trust Co. v. Village of Palatine,* 22 Ill.App.2d 264, 160 N.E.2d 697 (1959); *Glickman v. Parish of Jefferson, et al.,* 224 So.2d 141 (La.App.1969); *Franchise Realty Interstate Corporation v. City of Detroit,* 368 Mich. 276, 118 N.W.2d 258 (1962); *State ex rel Berndt v. Iten,* 259 Minn. 77, 106 N.W.2d 366 (1960); *City of Omaha v. Glissmann,* 151 Neb. 895, 39 N.W.2d 828 (1949); *Stalford v. Barkalow,* 31 N.J.Super. 193, 106 A.2d 342 (1954); *Lewis v. Board of Commissioners of Borough of Avon–By–The–Sea,* 7 N.J.Misc. 27, 143 A. 865 (1928); *Rubin v. McAlevey,* 29 A.D.2d 874, 288 N.Y.S.2d 519 (1968); *Nichol v. Planning Board of Village of Manlius,* 28 A.D.2d 1077, 285 N.Y.S.2d 647 (1967); *Hewlett Developers, Inc. v. Frisina,* 32 Misc.2d 910, 224 N.Y.S.2d 586 (1962); *Application of the Town Board of Huntington,* 13 A.D.2d 704, 214 N.Y.S.2d 164 (1961); *Gramatan Hills Manor, Inc. v. Manganiello,* 30 Misc.2d 117, 213 N.Y.S.2d 617 (1961); *Atlantic Refining Company v. Zoning Board of Appeals of Village of Sloan,* 14 Misc.2d 1022, 180 N.Y.S.2d 656 (1958); *Sun Oil Company v. Waldinger,* 14 Misc.2d 852, 179 N.Y.S.2d 12 (1958); *Suffolk Pines, Inc. v. Harwood,* 14 Misc.2d 826, 178 N.Y.S.2d 732 (1958); *Whittaker v. Burns,* 13 Misc.2d 233, 176 N.Y.S.2d 513 (1958); *Stowe v. Burke,* 255 N.C. 527, 122 S.E.2d 374 (1961); *State v. Ludewig,* 172 Ohio St. 441, 178 N.E.2d 89 (1961); *Baxley v. City of Frederick,* 133 Okl. 84, 271 P. 257 (1928); *Township of West Pikeland v. Thornton,* 106 Pa.Cmwlth. 560, 527 A.2d 174 (1987); *Boron Oil Company v. Kimple,* 445 Pa. 327, 284 A.2d 744 (1971); *Township of Honeybrook v. Alenovitz,* 430 Pa. 614, 243 A.2d 330 (1968); *Beverly Building Corporation v. Board of Adjustment,* 409 Pa. 417, 187 A.2d 567 (1963); *Shender v. Zoning Board of Adjustment,* 388 Pa. 265, 131 A.2d 90 (1957); *Aberman v. City of New Kensington,* 377 Pa. 520, 105 A.2d 586 (1954); *Bonitati Brothers, Inc. v. Zoning Board of Woonsocket,* 105 R.I. 602, 254 A.2d 415 (1969); *Campanella Corp. v. Zoning Board of Middletown,* 106

R.I. 495, 261 A.2d 644 (1970); *Najarian Realty Corporation v. Zoning Board of Review of the City of Pawtucket*, 99 R.I. 465, 208 A.2d 528 (1965); *Sherman v. Reavis*, 273 S.C. 542, 257 S.E.2d 735 (1979); *City of Dallas v. Crownrich*, 506 S.W.2d 654 (Tex.App.1974); *City of Dallas v. Meserole Bros.*, 164 S.W.2d 564 (Tex.Civ.App. 1942); *City of Dallas v. Meserole*, 155 S.W.2d 1019 (Tex.Civ.App.1941). Of these cases, some specifically address the pending ordinance doctrine: *Smith v. City of Clearwater*, 383 So.2d 681 (Fla.App.1980) ("for a zoning ordinance to be pending ..., it does not have to be before the city council provided the appropriate administrative department of the city is actively pursuing it); *Glickman v. Parish of Jefferson, et al.*, 224 So.2d 141 (La.App.1969) (finding that "petitioner did not have vested right in the zoning classification of the property in question remaining R–3, nor in having permit granted during the time of [a] reclassification study."); *Rubin v. McAlevey*, 29 A.D.2d 874, 288 N.Y.S.2d 519 (1968) (holding that an interim freeze on the issuance of permits until the enactment of a new comprehensive zoning ordinance was not arbitrary or capricious.); *Suffolk Pines, Inc. v. Harwood*, 14 Misc.2d 826, 178 N.Y.S.2d 732 (1958) ("Application for a permit made prior to the date of the adoption of an amendment to a zoning ordinance prohibiting or restricting a use permitted on the date of making the application does not vest the applicant with the right to the issuance of a permit ..."); *Boron Oil Company v. Kimple*, 445 Pa. 327, 284 A.2d 744 (1971) ("... a building permit may be refused if at the time of application there is pending an amendment to a zoning ordinance which would prohibit the use of the land for which the permit is sought."); *Beverly Building Corporation v. Board of Adjustment*, 409 Pa. 417, 187 A.2d 567 (1963) ("[a]n application for a building permit may be refused when the proposed building or use will violate a zoning ordinance which is pending in council, even though the ordinance is enacted several months after the permit was applied for."); *Sherman v. Reavis*, 273 S.C. 542, 257 S.E.2d 735 (1979) (a city may properly re-

fuse a building permit for land in use in a newly annexed area when such is repugnant to a pending and later enacted zoning ordinance); *City of Dallas v. Crownrich*, 506 S.W.2d 654 (Tex.Civ.App.1974), quoting from 50 A.L.R.3d 607, ("... the denial of an application for a building permit may be based on a zoning regulation enacted or becoming effective after the application was made, ...").

The City contends that the factual circumstance here permits it to snuggle within the embrace of this "pending ordinance doctrine." The City says that it is engaged in an ongoing effort to adopt a zoning ordinance amendment and that this ordinance will address businesses offering adult entertainment and constitutionally prohibit these businesses from operating in certain areas of the City. So long as this process is ongoing, argues the City, Lakeland Lounge may be denied the building permit sought and the certificate of occupancy. Furthermore, argues the City, this doctrine has been recognized by the State of Mississippi in the case of *Robinson Industries d/b/a McDonald's Restaurant v. City of Pearl*, 335 So.2d 892 (Miss.1976).

The cases cited by the City of Jackson all purport to enunciate some general principles regarding the doctrine of pending ordinance. However, none of the cases involves the factual scenario present in the case *sub judice* where the predecessor ordinance has been found to be unconstitutional by a federal district court. All of the cases dealt with uses such as gas stations, liquor stores, trailer parks, apartment complexes and shopping centers. None of the zoning ordinances attempted to regulate, restrict or limit protected speech activities. So, on this basis all of the cases cited by the City are distinguishable.

As for the City's assertion that Mississippi recognizes the pending ordinance doctrine, a careful reading of *Robinson Industries d/b/a McDonald's Restaurant v. City of Pearl* challenges this interpretation. The facts of *Robinson* are as follows: Robinson Industries began construction on a McDonald's Restaurant in the City of Pearl on March 13, 1974. Included

in the plans for the restaurant building was a proposal for construction of a set of McDonald's trademark "golden arches," a sign which would stand 75 feet high. Robinson let bids for the sign construction on April 2, 1974. It accepted the bid of Tennessee Continental Corporation for construction of the sign on April 25, 1974. Construction on the sign did not begin until August 8, 1974.

While Robinson Industries was in the process of constructing its restaurant, the City of Pearl was in the process of adopting a comprehensive zoning ordinance which incorporated certain restrictions on sign construction. On April 2, 1974, Pearl declared its intent to adopt a zoning ordinance. Pearl published notice of that fact on April 4 and April 11, 1974, and advised that public that the ordinance had been filed with the city clerk and was, therefore, available for inspection. Pearl conducted a public hearing on April 22, 1974, to entertain objections to the ordinance. Thereafter, Pearl adopted a comprehensive zoning ordinance which prohibited construction of a sign in excess of 30 feet in height at the location where Robinson Industries was constructing its restaurant.

In August, four months after the mayor and board of aldermen had publicly and officially declared their consideration of the adoption of the comprehensive zoning ordinance, Robinson Industries began construction of its 75–foot sign. A City building inspector informed Robinson Industries that the sign violated the City ordinance and should not be constructed. Robinson argued that the issuance of the permit to construct the sign prior to the adoption of the ordinance gave it a vested right to construct a sign at a later date which violated an ordinance which was adopted after issuance of the permit, but before construction of the sign actually began.

Nothing in *Robinson Industries* supports the City's contention that Mississippi recognizes a "pending ordinance doctrine." The Court in *Robinson Industries* merely found that Robinson Industries could not construct a sign in August, 1974, which violated an ordinance adopted by the City of Pearl which was then in effect. Further, the Mississippi Supreme Court held that since initial construction on the sign did not begin until August 8, 1974, and since Robinson Industries had notice of the impending zoning ordinance, on these facts, "McDonald's expenditures toward erection of the sign were not so substantial as to grant it the vested right to continue the construction in derogation of the ordinance." The *Robinson* facts do not evince a circumstance where a current land use was precluded based upon the contemplated provisions of a pending, but unenacted zoning ordinance. Nor has the City's counsel submitted any other Mississippi case authority which holds such. hence, the court concludes that the "pending ordinance doctrine" is a stranger to Mississippi case law.

Furthermore, a "pending ordinance doctrine" may contradict the express directive of the Mississippi State Legislature regarding the effective dates of ordinances adopted by municipalities. Miss.Code Ann. § 17–1–17 [13] (Supp.1991) provides that zoning ordinance amendments shall not be effective until after a public hearing is conducted which was advertised at least fifteen (15) days in advance. Furthermore, Miss.Code Ann. § 21–13–11 [14] provides that no ordinance shall be in force for one month after its passage. *Also see Streckfus Steamers, Inc. v. Kiersky,* 174 Miss. 125, 163 So. 830 (1935) (holding that an ordinance cannot be enacted and made effective on a prior date; nor can an ordinance be made effective immediately; ordinances are effective one month after passage).

---

**13.** Miss.Code Ann. § 17–1–17 (Supp.1991) provides in pertinent part:

Zoning regulations, restrictions, and boundaries may, from time to time, be amended, supplemented, changed, modified or repealed upon at least 15 days' notice of a hearing in such amendment, supplement, change, modi-

fication or repeal, said notice to be given in an official paper or a paper of general circulation in such municipality or county specifying a time and place for said hearing.

**14.** See footnote 7.

In sum, this court is not persuaded that the Mississippi Courts recognize the pending ordinance doctrine and, if adopted, that such a doctrine would not conflict with §§ 17-1-17 and 21-13-11 of the Mississippi Code.

■ Further, even if Mississippi had adopted a pending ordinance rule, this court doubts that it would attach at this stage of the process. Mr. William Hardin, Zoning Administrator for the City of Jackson, described the procedure by which the City of Jackson will attempt to amend its zoning ordinance: the Ordinance Review Committee of the Planning Board first considers amendments to the zoning ordinance. Once the Ordinance Review Committee of the Planning Board has concluded its deliberations, it makes a recommendation for ordinance amendments to the City of Jackson Planning Board. The Planning Board, scheduled to meet June 16, 1992, will consider the recommendations made by the Ordinance Review Committee and is free to adopt, change, amend or reject the proposals made by the Ordinance Review Committee. After the City of jackson Planning Board develops an ordinance amendment, it is required to publish notice of the amendments and to conduct a public hearing to invite input from members of the public regarding the ordinance amendments. Assuming that the Planning Board intends to give any consideration to comments from members of the public, amendments, changes, or alterations to the proposed amendments may result following the public hearing. After receiving public comment and giving full consideration to any amendments, the Planning Board then may make recommendations to the City Council for the City of Jackson as to what, if any, zoning ordinance amendments relating to adult entertainment would be appropriate. The City Council may provide public notice to the public and an opportunity for a public hearing in addition to the public hearing conducted by the Planning Board. Of course, the City Council may alter, amend, accept or reject any recommendations made by it to the Planning Board. Assuming that the City Council adopts amendments to the zoning ordinance which regulate adult entertainment establishments, those regulations will take effect thirty days from and after passage by the City Council.

As readily noted, this process is besieged with uncertainty. Anywhere along this political trial, various suggested provisions of any such amendment might be ambushed and buried, even the amendment itself. Presently, the amendments are at the starting gate, with the Planning Board. Before final adoption, the amendments yet have a journey to make and political considerations to abide. Nevertheless, the City represents that it can gaze into its political crystal ball and divine the final language of the proposed amendments. The court is not so clairvoyant. In the face of such uncertainty and where the amendments are now in this process, this court would be reluctant to apply a pending ordinance rule, unless Mississippi law clearly provided for such, which it does not.

■ In the absence of the pending ordinance doctrine, the City is defenseless in its position. The City has no constitutional ordinance in effect which imposes use and location restrictions on adult entertainment in the form of topless dancing. Gary Hathorn, the City Building Official, admitted that reliance on the pending ordinance doctrine was his sole reason for denying Lakeland a building permit. hence, the City's refusal now to issue a building permit to Lakeland amounts to action which impedes and trespasses upon a First Amendment protected activity. *See Schad v. Mount Ephraim, supra,* 452 U.S. at 68-69, 101 S.Ct. at 2182-83, the United States Supreme Court stated:

> ... when a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest. In *Schneider v. State,* 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 155] (1939), for example, the Court recognized its obligation to assess the substantiality of the justification offered for a regulation that significantly impinged upon freedom of speech:

"Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions...."

See also *Krueger v. City of Pensacola*, 759 F.2d 851, 854 (11th Cir.1985) (because of a potential for infringement on protected expression, we must require the government to show that its interest in regulating such activity is based on something other than a desire to censor the communication because of the community's dislike of its content).

Therefore, the court finds that the City should be enjoined to issue to Lakeland a building permit pursuant to Lakeland's application filed on February 12, 1992.

During the hearing, there was unchallenged testimony by the City that while this lawsuit was pending, Lakeland made improvements without the requested building permit. Such conduct is prohibited by A103.7.2 of the Standard Building Code and exposes a violator to the possibility of having to pay double the fee for a subsequently-issued building permit. Whether Lakeland should pay any enhanced fee as a result of its decision to proceed without a permit is a question the court will address when it rules on the merits of this dispute.

■ Lakeland also requests the court to enjoin the City, its officers, agents, and employees from filing criminal affidavits asserting violations of the Standard Building Code relative to occupancy. Injunctions against criminal prosecutions have been expressly authorized by the United States Supreme Court, both before the prosecution is instigated, and even after the criminal process had begun. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (stating that "[t]he principle underlying *Younger* and *Samuels* [*v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688] is that state courts are fully competent to adjudicate constitutional claims, and, therefore, a federal court should, in all but the most exceptional circumstances, refuse to interfere with an ongoing state criminal proceeding.

In absence of such a proceeding, however, as we recognized in *Steffel* [*v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)], a plaintiff may challenge the constitutionality of the state statute in federal court, assuming he can satisfy the requirements for federal jurisdiction."); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611, 95 S.Ct. 1200, 1212, 43 L.Ed.2d 482 (1975) (*Younger*, and its civil counterpart which we apply today, do of course allow intervention in those cases where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' "); *Fitzgerald v. Peek*, 636 F.2d 943 (5th Cir.1981) (holding that "it is well established that a showing of bad faith prosecution presents a narrow exception to the doctrine of abstention which will justify federal interference in a pending state court criminal proceeding."). In order to obtain preliminary injunctive relief, the movant need only show that the government's prosecution is motivated in part by an attempt to deter the exercise of First Amendment rights. *See Wilson v. Thompson*, 593 F.2d 1375 (5th Cir.1979); *Fitzgerald v. Peek, supra*, (where plaintiffs brought suit in federal district court to enjoin state court prosecution allegedly brought in bad faith for purposes of harassing and punishing plaintiffs for having exercised their First Amendment rights, court held a showing of bad faith or harassment is equivalent to a showing of irreparable injury under *Younger* ...).
According to Lakeland, during a meeting of the City Council for the City of Jackson on May 12, 1992, Gary Hathorn, Building Official for the City, threatened to file a criminal affidavit against Lakeland for violating the Standard Building Code.

Mr. Hathorn testified that the Standard Building Code requires that Lakeland submit an application for an existing building certificate of occupancy. Mr. Hathorn has

undefinedtrue**466**

testified that he will not issue an existing building certificate of occupancy because Lakeland provides adult entertainment in the form of topless dancing, the same basis for refusal to issue a building permit to construct an addition to the existing structure. Additionally, Mr. Hathorn represents that Lakeland is required to obtain a new certificate of occupancy because topless dancing will now be provided, as opposed to patron dancing, which was allowed by Lakeland's predecessor at the same location.

This court is not persuaded by this offered reason to deny to Lakeland a certificate of occupancy. This but appears to be a desperate ruse to prevent Lakeland from going into operation. Several reasons compel this conclusion. First, Mr. Hathorn testified that the City has required only three to five existing building certificates of occupancy in the fifteen months that he has served as Building Official. This clearly indicates that the City does not routinely enforce this provision of the building code and that the City's requirement in this case appears to be motivated by its distaste for the expressive conduct of Lakeland.

Secondly, the Standard Building Code defines the term "occupancy" as follows:

OCCUPANCY—The purpose for which a building, or part thereof, is used or intended for use. See page 12, *Standard Building Code*, 1985.

Section A103.9.1 of the Standard Building Code provides:

A103.9.1 *Building Occupancy.* A new building shall not be occupied or a change made in occupancy or the nature or the use of a building or a part of a building until after the Building Official has issued a certificate of occupancy. Said certificate shall not be issued until all required fire protection systems have been tested and approved.

The building located at 1925 Lakeland Drive was constructed in about 1972 and has been operated as a restaurant and lounge since that time. No change has occurred in the occupancy or the nature or the use of the building since it was first constructed. In 1984, the City Building & Permit Department evaluated the building with its established fire exits to determine the maximum permitted occupancy. The City established the occupancy load at 450 persons so long as three emergency exits are maintained. According to the testimony of Captain Johnnie Lynn, no changes have occurred in the building which would alter the occupancy load established in 1984.

Thirdly, Mr. Hathorn now asserts that because topless dancing is provided instead of patron dancing, then a new certificate of occupancy is required. Nothing in the Standard Building Code commands this interpretation. Both uses, topless dancing and patron dancing, qualify as assembly occupancies.[15]

Furthermore, no substantive violations of the Standard Building Code exist at 1925 lakeland Drive. Herbert Cannon, an inspector for the City's Code Services Division, has inspected the building on at least two occasions. Mr. Cannon specifically has stated that he can detect no violations of the Building Code, nor is he aware of any unsafe conditions. The one possible violation which he earlier noted was remedied in a manner which Mr. Cannon deemed appropriate and in compliance with the Building Code. Additionally, the building has been thoroughly inspected by representatives of the Fire Marshal's Office, and all fire safety deficiencies noted by their inspections have been remedied. As part of their inspection, all required fire protection systems were tested and approved.

Lakeland has established that efforts by the City to pursue criminal charges against Lakeland for alleged violation of the Standard Building Code appear to be motivated in part by an effort to deter the exercise of First Amendment rights. The motivation for the City's filing criminal affidavits appears rooted in an effort to prevent Lakeland from exercising rights protected by

---

**15.** There was in-court testimony that both patron dancing and topless dancing are regarded as assembly uses of the premises.

the First Amendment. The court finds that the City should be enjoined from filing criminal affidavits alleging violations of the Standard Building Code until a final hearing on the merits can be conducted in this cause.

### b. *Irreparable Harm*

 The City of Jackson contends that Lakeland Lounge can show nothing in support of the assertion that it will suffer irreparable harm as a result the City's refusal to issue a permit. Lakeland Lounge responds that it is entitled to exercise its First Amendment right to free speech without being subject to continued harassment and intimidation in the form of refusal to issue a building permit or a certificate of occupancy.

Lakeland is correct. Violation of a constitutional right is irreparable harm, even for minimal periods of time. One who shows deprivation of a constitutional right need go no further in showing the requisite harm for injunctive relief. *See Elrod v. Burns,* 427 U.S. 347, 374, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976); *Cate v. Oldham,* 707 F.2d 1176, 1188 (11th Cir.1983). On this basis alone, Lakeland Lounge makes a sufficient showing of the possibility for irreparable harm since the actions of the City are designed to curtail or interfere with a protected speech activity.

### c. *Balance of Harms*

 The City says that if an injunction is granted, the City will have to suffer a "proliferation of adult entertainment businesses prior to the adoption of the amendment to its zoning ordinance." Lakeland Lounge responds that vindication of its constitutional rights is paramount in this instance, that it should not be required to surrender exercise of its First Amendment rights. Further, says Lakeland, injunctive relief will not harm the City. In the event the court's injunction is subsequently found to be improper, the City can at that time pursue legal action against the Lounge. Meanwhile, with no ordinance regulating adult entertainment currently in effect and given the constitutional protec-

tion afforded such activity under the First Amendment, Lakeland Lounge submits that it should be permitted to continue in business until the court has had an opportunity to conduct a trial on the merits of whether the City of Jackson may withhold permits and certificates related to the privilege of doing business pursuant to its claim that an ordinance declared unconstitutional is being redrawn to meet constitutional requirements. The court agrees with Lakeland and concludes that the balance of harms favors the granting of injunctive relief.

### d. *The Public Interest*

This factor, too, favors Lakeland. The original amendment to the City's zoning ordinance was found unconstitutional. There is no guarantee that any subsequent effort by the City will pass constitutional muster. Meanwhile, no ordinance regulates this type adult entertainment at this time. Therefore, given the public's continuing interest in the exercise of free speech and expression, the court finds that the public interest will not be disserved by the issuance of an injunction in this case.

IT IS, THEREFORE, ORDERED that the City of Jackson is hereby enjoined and shall refrain from refusal to issue Lakeland Lounge a building permit for the enlargement of the premises at 1925 Lakeland Drive, Jackson, Mississippi, on the ground that adult entertainment such as that provided by Lakeland Lounge is not permitted in areas zoned C–3 pursuant to an ordinance which is expected to be promulgated in the future. Under the submitted evidence, such a refusal appears to be an unauthorized restraint on protected speech activity.

### *On The Matter Of A Stay*

Following the arguments of the respective parties before the court on Lakeland's motion for injunctive relief, the court learned that the United States Court of Appeals for the Fifth Circuit is considering whether to grant a stay of Judge Barbour's holding in cause number J92–0123(B). Following his ruling, Judge Barbour was

asked by the City to stay his opinion. He denied the request. Thereafter, the City took an appeal to the Fifth Circuit, requesting a stay of Judge Barbour's holding from that body. Should the Fifth Circuit grant the stay, this course of action could impact upon the status of this lawsuit, especially if the City's zoning ordinance is reinstated. The lawsuit *sub judice* was predicated upon the absence of a constitutional zoning ordinance addressing the location of businesses offering topless dancing; the central dispute here was, in that absence, could the City withhold various permits to Lakeland pursuant to a pending ordinance doctrine. Lakeland's First Amendment argument then could be affected substantially should the Fifth Circuit decide to reinstate the City's ordinance. Consequently, this court has determined that it is in the best interests of justice to stay the instant holding in the case *sub judice* until the Fifth Circuit rules on the City's motion to stay Judge Barbour's holding.

SO ORDERED.